## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA CIOTTI; DOROTA JANCZAK; NEBIS DIAZ; KATIE POLITE; DANUTA MAJDOSZ; THOMAS A. SMID; LIDIA MATEO; BERNADETTE BERIDA-MILLER; TOWANDA BUDHU; and LUTGARDA BIELUCH (Class Representatives and Similarly Situated Members of the Class), | Civil A. No. 13-cv-02055-KM-MCA |
| Plaintiffs, | |
| vs. | |
| MEADOWLANDS HOSPITAL MEDICAL CENTER and MEADOWLANDS HOSPITAL MEDICAL CENTER HEALTH & WELFARE BENEFITS PROGRAM, | **Electronically Filed** |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS IN LIEU OF ANSWER

A. Ross Pearlson
Xavier M. Bailliard
**WOLFF & SAMSON PC**
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300
rpearlson@wolffsamson.com
xbailliard@wolffsamson.com

*Attorneys for Defendants*
*MHA LLC d/b/a Meadowlands Hospital*
*Medical Center and Meadowlands Hospital*
*Medical Center Health & Welfare Benefits*
*Program*

4147226.3

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 4

LEGAL STANDARD ................................................................................................................. 8

LEGAL ARGUMENT ................................................................................................................ 8

POINT I     THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD
EXHAUSTION OF ADMINISTRATIVE REMEDIES
(Counts One, Three, Four, & Five) ............................................................... 8

    A.    PLAINTIFFS FAIL TO PLEAD EXHAUSTION OF THE
PLAN'S APPEAL AND GRIEVANCE PROCEDURES
(Count One) ..................................................................................... 8

    B.    PLAINTIFFS FAIL TO PLEAD EXHAUSTION OF THE CBAs'
GRIEVANCE AND ARBITRATION PROCEDURES
(Count Five) ................................................................................... 10

    C.    PLAINTIFFS' FIDUCIARY DUTY CLAIMS SHOULD BE
DISMISSED BECAUSE THEY MERELY RECAST
PLAINTIFFS' ERISA-BENEFITS CLAIM IN STATUTORY
TERMS AND THE COMPLAINT FAILS TO SUFFICIENTLY
PLEAD EXHAUSTION OF THE PLAN'S APPEAL &
GRIEVANCE PROCEDURES (Counts Three & Four) ......................... 11

POINT II    PLAINTIFFS ASSERT LIABILITY AND SEEK RELIEF THAT
IS NOT AVAILABLE UNDER ERISA (Count Two) .............................. 13

POINT III    PLAINTIFFS FAIL TO IDENTIFY THE PROVISIONS OF
THE  PLAN AND CBAs WHICH DEFENDANTS HAVE
ALLEGEDLY VIOLATED (Counts One, Two & Five) ......................... 14

    A.    PLAINTIFFS FAIL TO PLEAD WITH ANY SPECIFICITY THE
PARTICULAR PROVISION(S) OF THE PLAN THAT WERE
ALLEGEDLY VIOLATED (Counts One & Two) ................................. 14

    B.    PLAINTIFFS FAIL TO PLEAD WITH ANY SPECIFICITY THE
PARTICULAR PROVISONS OF THE CBAs THAT WERE
ALLEGEDLY VIOLATED (Count Five) ............................................. 15

i

4147226.3

POINT IV        THE COMPLAINT FAILS TO PLEAD DEFENDANTS USED
                ASSETS OF THE PLAN FOR THEIR OWN BENEFIT
                (Count Four).......................................................................................... 15

CONCLUSION........................................................................................................................ 16

4147226.3

# TABLE OF AUTHORITIES

<u>**Page**</u>

CASES

Abdelmesih v. Waldorf-Astoria,
 1998 WL 740940 (S.D.N.Y. Oct. 21, 1998) .......................................................................15

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ................................................................................................. 8, 14-15

Bell Atlantic v. Twombly,
 550 U.S. 554 (2007) ..........................................................................................................8, 14

Bennett v. Prudential Ins. Co.,
 192 F. App'x 153 (3d Cir. 2006) .........................................................................................9

Eichorn v. AT&T Corp.,
 484 F.3d 644 (3d Cir. 2007) ...............................................................................................14

Fritzky v. Aetna Health, Inc.,
 2010 WL 1186226 (D.N.J. Mar. 24, 2010) .......................................................................13

Gunderson v. St. Louis Connectcare,
 4:08CV01553 JCH, 2009 WL 882240 (E.D. Mo. Mar. 26, 2009) .........................................14

Harrow v. Prudential Ins. Co. of Am.,
 279 F.3d 244 (3d Cir. 2002) ............................................................................... 8-9, 11, 13

Hines v. Anchor Motor Freight, Inc.,
 424 U.S. 554, 96 S. Ct. 1048, 47 L. Ed. 2d 231 (1976) .................................................. 10-11

Koshatka v. Philadelphia Newspapers, Inc.,
 762 F.2d 329 (3d Cir. 1985) ...............................................................................................10

Manning v. Bouton,
 678 F.2d 13 (3d Cir.1982) ..................................................................................................10

Republic Steel Corp. v. Maddox,

 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) .......................................................10

Smith v. Sydnor,
 184 F.3d 356, 362 (4th Cir. 1999) ...................................................................................11

Structural Maint. & Contracting Co., Inc. v. Jayce Enterprises, Inc.,
 2010 WL 4159517 (S.D.N.Y. Oct. 12, 2010) .................................................................. 15-16

4147226.3

Turner v. CIGNA Grp. Ins.,
   2011 WL 2038751 (D.N.J. May 24, 2011) ............................................................................14

Union Ind. de Abogados v. Sociedad Para Asist. Legal,
   706 F. Supp. 3, 5 (D.P.R.) ......................................................................................................15

4147226.3

## PRELIMINARY STATEMENT

The Plaintiffs'[1] Second Amended Complaint (D.E. 21, Pearlson Decl., Exh. A) (the "Complaint") should be dismissed for failure to state a claim against defendants MHA, LLC, d/b/a Meadowlands Hospital Medical Center ("Meadowlands Hospital"), and the Meadowlands Hospital Medical Center Health and Welfare Benefits Program (the "Plan") (collectively, "Defendants") for alleged failures to pay benefits.  Plaintiffs, representing a putative class of current and former employees of Meadowlands Hospital, claim to have been denied health and welfare benefits under the Plan.  They allege that Meadowlands Hospital systematically denied or delayed approval and authorization of payment on claims recommended by the Plan's third-party administrator in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA").

Each of Plaintiffs' claims, however, fails as a matter of law and should be dismissed.  Specifically, Plaintiffs have (i) failed to exhaust the relevant administrative remedies, (ii) asserted claims and demanded remedies that are not cognizable under ERISA, (iii) failed to identify any specific breach of the Plan in their ERISA claims or any breach of the collective bargaining agreements in their LMRA claims, and (iv) failed to plead any specific misuse of Plan assets.

First, Plaintiffs have failed to exhaust the administrative remedies available under the Plan and the relevant collective bargaining agreements.  Plaintiffs' failures to appeal denials of benefits as required by the Plan is fatal to their ERISA claims.  Additionally, Plaintiffs' failure to

---

[1] "Plaintiffs" shall refer to plaintiffs Maria Ciotti, Dorato Janczak, Nebis Diaz, Katie Polite, Danuta Majdosz, Thomas Smid, Lidia Mateo, Bernadette Berida-Miller, Towanna Budhu, Lutgarda Bieluch, Sejal Patel, Albert Guzman, Sylvia Caban, Christine Castellanos, and Martha Serrano, individually and as representatives of a putative class of persons similarly situated.

file grievances and, ultimately, to pursue arbitration is a violation of the four-step grievance procedure set forth in the collective bargaining agreements precludes their LMRA claims. Plaintiffs do not allege that their failure to exhaust available remedies should be excused on the ground that any effort to appeal denials of benefits or to file grievances would have been futile. Moreover, Plaintiffs' claims for breach of fiduciary duties are nothing more than restated claims for benefits that fail as a matter of law.  Absent exhaustion of remedies or some demonstration of futility, Plaintiffs' ERISA and LMRA claims are improper and should be dismissed.

Second, Plaintiffs are asserting theories of liability and consequential damages that are not cognizable under ERISA.  There is no cause of action under ERISA for delayed payment of claims for benefits.   Similarly, ERISA does not permit a plaintiff to recover consequential damages.  Accordingly, Plaintiffs' claim for untimely payment of benefits in Count Two fails as a matter of law and must be dismissed.

Third, Plaintiffs fail to identify any specific provision of the Plan or the various collective bargaining agreements that was allegedly breached by Defendants.  Any ERISA claim requires a plaintiff to set forth the specific provision of the relevant plan that was breached.  Similarly, any LMRA claim for breach of a collective bargaining agreement must identify the specific provision that was breached.  Plaintiffs' failure to plead the breach of any specific term of the Plan or collective bargaining agreements, therefore, warrants dismissal.

Fourth, Plaintiffs' have failed to plead facts regarding their fiduciary duty claim that Defendants dealt with plan assets in their own interest.   Any such claim requires factual allegations regarding the disposition of Plan assets.  Plaintiffs' failure to plead such facts is fatal to their claim, which must be dismissed.

4147226.3

Accordingly, each of Plaintiffs' claims fails as a matter of law and, as more fully set forth below, Plaintiffs' Complaint should be dismissed in its entirety.

3

## FACTUAL BACKGROUND

The allegations set forth in the Complaint are as follows:

Meadowlands Hospital and the Union are parties to three separate collective bargaining agreements (the "CBAs") covering professional, technical, service, maintenance, and certain clerical employees of Meadowlands Hospital from December 7, 2010 to May 31, 2016. (Compl. ¶ 21; Pearlson Decl., Exhs. B-D.) The CBAs provide that employees represented by the Union are entitled to health and welfare, dental, and prescription benefits under the Plan. (Compl. ¶¶ 22-23.)

Each of the CBAs has a substantially similar four-step grievance procedure that ultimately results in a referral of the grievance to binding arbitration:

> For the purpose of this Agreement, a grievance is defined as a dispute arising out of the application or interpretation of any of the provisions of this Agreement and shall be processed in the following manner:
>
> STEP 1. Within ten (10) days of an event/action leading to a grievance, the grievance shall be presented in writing to the Department Manager or immediate relevant supervisor. The employee having a grievance and or his/her Union Representative shall arrange a meeting with the employee's immediate relevant supervisor for the purpose of discussing the grievance within the next five (5) working days. The supervisor shall provide an answer in writing within five (5) working days of the meeting.
>
> STEP 2. If the grievance is not resolved in Step 1, the employee and/or his/her representative shall have five (5) working days from the Step 1 receipt of the answer to submit a grievance in writing to the Vice President/Department Director of the unit/area. The grievance shall be considered resolved unless submitted in writing with the time limit provided herein.
>
> The VP/Director or other representative of the Hospital shall meet with the Union representative and grievant within five (5) working days from the Step 1 receipt of the written grievance and will respond in writing within five (5) working days of the close of that meeting. If no response is forthcoming, the Union shall have the right to proceed to Step 3.

4

STEP 3.  If the grievance is not resolved in Step 2, the employee and/or his representative shall have five (5) working days from the Step 2 receipt of the answer to submit a grievance in writing to the Vice President of Human Resources and/or designee.  The grievance shall be considered resolved unless submitted in writing within the time limit provided herein.

The Vice President of HR and/or designee shall meet with the internal Union Representative and Union Staff Representative and grievant within five (5) working days of the receipt of the written grievance and will respond in writing within five (5) working days of the close of the meeting.  If no response is forthcoming, the Union has the right to proceed to Step 4.

STEP 4.  Arbitration.  If a grievance is not satisfactorily adjusted during the foregoing Steps, the Union may refer the matter to arbitration within 21 calendar days of the receipt of the Hospital's Step 3 answer, by giving notice to the Hospital and American Arbitration Association in writing of the intent to arbitrate.  If the Union fails to refer the grievance to arbitration within 21 calendar days of receipt of the Hospital's Step 3 answer, the grievance shall be considered waived under this Article.

(Pearlson Decl., Exh. B at § 9.1; see also Exhs. C at § 9.1, D at § 9.1.)

Plaintiffs are current or former employees of Meadowlands Hospital and participants in the Plan.  (Compl. ¶ 1.)  Each of the Plaintiffs has been represented, for the purposes of collective bargaining, by the Health Professionals and Allied Employees, AFT, AFL-CIO (the "Union") and claims to be a third-party beneficiary of one of the CBA's.  (Compl. ¶¶ 4-18.)

The costs of the Plan are funded directly by Meadowlands Hospital and by contributions of eligible employees through monthly payroll deductions.  (Compl. ¶ 24.)  The Plan was administered by a third-party administrator ("TPA"), which was Qualcare, Inc. until July 1, 2011 and thereafter MagnaCare, LLC.  (Compl. ¶ 1.)  Participating employees receiving services from health care providers under the Plan either submit claims to the TPA directly or through their health care providers.  (Compl. ¶ 25.)  The TPA reviews each claim to determine whether it is covered by the Plan and, if so, the amount the Plan will pay.  (Compl. ¶ 26.)  The TPA advises

5

Meadowlands Hospital of each valid claim but does not pay the claim until approved by Meadowlands Hospital.  (Id.)

The Plan's Medical Summary Plan Description sets forth a three-part appeal and grievance procedure for participants to challenge a denial of any claim.  (Pearlson Decl., Exh. E.) The appeal and grievance procedure provides, in relevant part:

### APPEAL OF ADVERSE BENEFIT DETERMINATION

**STAGE 1 APPEAL: INTERNAL**   If you wish to appeal in writing an Adverse Benefit Determination Decision, you may submit a Stage 1 claim appeal.  * * *  The Plan representative will review your appeal, make a determination on that appeal and communicate its decision to your or your representative as described below:

*Urgent Care Claims.*   The Plan will notify you as to its determination of a claim involving urgent care as soon as possible but not later than 24 hours after receipt of the claim by the Plan. This is so whether or not the determination is adverse and will take into account the medical exigencies.  In the event that there is insufficient information to process the claim, you will be notified, no later than 24 hours after receipt of the claim, of the need for additional information to process it.  You will have 48 hours from the date of such notice to provide the requested information. Failure to provide the necessary information within the 48-hour period described above may result in the denial of the claim.

*Pre-service claims.*  Decisions on review of pre-service claims will be made and communicated as soon as reasonably possible, but in all cases within 15 days of the Plan's receipt of the claim.

*Post-service claims.*  Decisions on review of post-service claims will be made and communicated as soon as reasonably possible, but in all cases within 30 days of the Plan's receipt of the claim.

You will be permitted to review the claim file and to present evidence and written testimony as part of the internal appeal process.  You will be provided, free of charge, any new or additional evidence or rationale considered, relied upon, or generated by the Plan in connection with the claim.  Such evidence or rationale will be provided as soon as possible and sufficiently in advance of the date in which any notice of final internal adverse

4147226.3

benefit determination is made in order to give you reasonable opportunity to respond prior to such final determination.

The Plan will see to it that all claim/appeals are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decisions.

Upon request, the Plan will provide you notice of available internal claims and appeals and external review procedures in a culturally and linguistically appropriate manner, if applicable. Any notice given subsequent to such request shall be made in the same manner.

The Plan will provide you with continued coverage pending the outcome of an internal appeal.

**STAGE 2 APPEAL: INTERNAL** If you will to appeal the Stage 1 Appeal decision, you may do so in writing. A decision will be sent to you or your representative in writing within <u>15 days for pre-service claims</u> and <u>30 days for post-service claims</u> from receipt of the Stage 2 Appeal. If the Stage 2 Appeal is denied, then **you** and/or your provider will be provided with written notification of the denial and the reasons for the denial and an explanation outlining your right to proceed to an **External Review Process** and a description of the process.

**EXTERNAL REVIEW PROCESS.** The Plan provides for an external review process in accordance with recent changes in Federal law. You will be provided with detailed information regarding the External Review Process once you have exhausted the Plan's Internal Appeal Process. * * *

(Pearlson Decl., Exh. E) (emphasis in original). Any external review is conducted by an Independent Review Organization. (Id.) The Plan also sets forth the information that will be communicated in its decisions at each stage. (Id.)

Since January 1, 2011, Meadowlands Hospital allegedly has exercised independent judgment with regard to the payment of individual claims and declined to approve payment of certain claims that the TPA has recommended for payment. (Compl. ¶ 27.) Meadowlands Hospital has also allegedly delayed authorization of claims or issuance of explanations of benefits ("EOBs") setting forth the basis for a determination of a claim. (Compl. ¶ 28.) These

4147226.3

purported delays have allegedly prevented participants from submitting outstanding balances to secondary insurers, from obtaining secondary insurance coverage, and from entering into agreements with in-network providers to accept payment from the Plan as full satisfaction of claims.  (Compl. ¶¶ 28-44.)   In some cases, such alleged denials and delays have caused participants to pay for health care services out of pocket, to incur judgments for unpaid health care costs, or adversely impacted participants' credit worthiness.  (Compl. ¶¶ 30-44.)

## LEGAL STANDARD

To survive a Motion to Dismiss, a complaint must allege sufficient facts to state a claim that is plausible on its face.  Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007).  A claim is plausible on its face if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The mere recital of the elements of a cause of action, supported only by conclusory statements, does not suffice.  Id.  Legal conclusions must be supported by factual allegations to withstand dismissal.  Id. at 679.

## LEGAL ARGUMENT

### POINT I
### THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD
### EXHAUSTION OF ADMINISTRATIVE REMEDIES
### (COUNTS ONE, THREE, FOUR & FIVE)

A.    Plaintiffs Fail to Plead Exhaustion of the Plan's Appeal and Grievance Procedures (Count One)

It is well settled that, except in limited circumstances, a federal court will not entertain an ERISA-benefits claim unless the plaintiff has exhausted the appeal procedures available under the employee benefit plan.  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir.

8

2002).  In this manner, where a complaint fails to allege that the plaintiff exhausted the available internal remedies or that such effort would have been futile, all alleged ERISA-benefits claims must be dismissed.  See Bennett v. Prudential Ins. Co., 192 F. App'x 153, 155 (3d Cir. 2006).

Here, the Plan incorporates a three-stage Appeal and Grievance Procedure that must be exhausted before the filing of any lawsuit.  (Pearlson Decl., Exh. E.) For adverse benefit determinations, the Stage 1, and, if necessary, subsequent Stage 2, appeal must be made internally.  (Id. at 87-88.)  If the Stage 2 Appeal is denied, a dissatisfied claimant may bring an external appeal to an Independent Review Organization.  (Id. at 88-89.)  The Plan then clearly and unequivocally states:

> If the external review process results in a denial of the requested service, then you still have the right to bring civil action under ERISA Section 502(a) [29 U.S.C. § 1132(a)].  But this is true only after required Plan appeals have been exhausted.

Id. at 90.

Besides briefly referring to one undecided appeal by a single plaintiff regarding $1,098.00 in emergency room charges (Compl. ¶ 30),  the Complaint is devoid of any allegations that the Plaintiffs filed even Stage 1 Appeals, let alone exhausted their Stage 2 and External Review procedures.   As such, Count One should be dismissed for failure to exhaust administrative remedies.  See Harrow, 279 F.3d at 249.

While a plaintiff is excused from exhausting their administrative remedies if it would be futile to do so, Harrow, 279 F.3d. at 249, in this case, the Complaint fails to allege, or provide any factual justification, that exhaustion would be futile.  Applying Harrow, there is no basis for application of the futility exception and, therefore, dismissal is warranted here.

9

B.      Plaintiffs Fail to Plead Exhaustion of the CBAs' Grievance and
        Arbitration Procedures (Count Five)

To the extent that Plaintiffs allege a breach of their respective CBAs, such claims must be dismissed for failure to exhaust administrative remedies and submit their claims to binding arbitration.   Specifically, Plaintiffs have failed to pursue each of the three internal grievance steps or to submit their grievances to the final step of arbitration as required by the CBAs.

Prior to filing an LMRA § 301 claim in federal court, an aggrieved employee must exhaust the grievance and arbitration provisions under the applicable collective bargaining agreement.  Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 334 (3d Cir. 1985) (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)); see also Manning v. Bouton, 678 F.2d 13, 16 (3d Cir.1982) ("Being bound by the collective bargaining agreement, [Plaintiff] was not free to ignore the procedures it specifies for the pressing of grievances by bringing suit in federal court.").   In this manner, where a plaintiff fails to exhaust the available grievance and arbitration procedures or to allege that any such effort would be futile, any LMRA § 301 claims should be dismissed.  Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563, 96 S. Ct. 1048, 1056, 47 L. Ed. 2d 231 (1976) (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)).

In this case, the CBAs provide a four-step grievance and arbitration procedure.  (Pearlson Decl., Exhs. B-D.)  Pursuant to this process, grievances must be submitted in sequence to an employee's Department Manager or immediate relevant supervisor, then to the Vice President / Department Director, then to the Vice President of Human Resources, and, ultimately, to the American Arbitration Association on notice to Defendants.  (Id.)  If at any point there is no response to a timely grievance, then the express terms of the grievance procedure require the employee to proceed to the next step to pursue the grievance.  (Id.)

10

As reflected in the Complaint, 14 of the 15 named Plaintiffs failed to raise their grievances to their department managers or immediate supervisors (Step 1).  None of the Plaintiffs submitted their grievances to the department director (Step 2) or the director of human resources (Step 3), nor have they alleged any justification for their failure to do so.  None of the Plaintiffs filed or served any demand for arbitration (Step 4), nor is it alleged that any grievance was arbitrated with or without the participation of Defendants.[2]  Therefore, Count Five should be dismissed for failure to exhaust administrative remedies.  See Hines, 424 U.S. at 563.

C.     Plaintiffs' Fiduciary Duty Claims Should be Dismissed Because They Merely Recast Plaintiffs' ERISA-Benefits Claim in Statutory Terms and The Complaint Fails to Sufficiently Plead Exhaustion of the Plan's Appeal & Grievance Procedures.   (Counts Three & Four)

Claims brought under ERISA §§ 404-406 for breach of fiduciary duty may be dismissed for failure to exhaust administrative remedies where the fiduciary duty claim merely recasts a denial of benefits claim in statutory terms.  Harrow, 279 F.3d. at 251.  "Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims."  Id. at 253 (citations omitted).  As such, where, as here, "the facts alleged do not present a breach of fiduciary duty claim that is independent of a claim for benefits, the exhaustion doctrine still applies."  Id.  "A claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA."  Id. at 254 (citing Smith v. Sydnor, 184 F.3d 356, 362 (4th Cir. 1999)).

---

[2] Had any Plaintiff filed for arbitration with the American Arbitration Association, that arbitration could have proceeded with or without Defendants' participation.  AAA Labor Arbitration Rule 6 (Answer) provides, in relevant part: "If no answer is filed within the stated time, it will be treated as a denial of the claim. Failure to file an answer shall not operate to delay the arbitration."

4147226.3

Here, Plaintiffs improperly assert claims for breach of fiduciary duty that are, in actuality, restated claims for denials of benefits.  Count Three of the Complaint alleges as follows:

> 66.  Pursuant to Section 404(a)(1)(A)(i) of ERISA, 29 U.S.C. § 1104(1)(1)(A)(i) [sic], Defendant Meadowlands has a fiduciary obligation to administer the Defendant Plan for the purpose of providing benefits to the named Plaintiffs and class members and their beneficiaries.

> 67.  The refusal of Defendants to provide benefits or to provide such benefits in a timely fashion to the named Plaintiffs and class members and their beneficiaries, notwithstanding the fact that the claims of the named Plaintiffs and the class members are covered by the Defendant Plan, constitutes a breach of the fiduciary duty owed by the Defendant Meadowlands to administer the Defendant Plan for the benefit of the named Plaintiffs and class members and their beneficiaries.

(Compl. ¶¶ 66-67.)  Similarly, Count Four asserts:

> 69.  By refusing and/or delaying to pay benefits under the terms of the Plan, Defendant Meadowlands effectively has used the assets of the plan for its benefit.

> 70.  As a fiduciary, Defendant Meadowlands has engaged in prohibited transactions by using the assets of the Plan for the benefit of Meadowlands and thus has violated Section 1106(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1).

> 71.  The conduct of Defendant Meadowlands in utilizing the assets of the Plan for its own benefit is a breach of its fiduciary duty as defined by Section 404(a)(1)(A)(i) of ERISA; 29 U.S.C. § 1104(a)(1)(A)(i).

(Compl. ¶¶ 69-71.)

Although couched in statutory terms, Counts Three and Four are challenging Defendants' refusal to provide benefits under the Plan, not conduct amounting to a statutory breach of fiduciary duty.  Plaintiffs do not allege any fact that, if proven, would establish a breach of fiduciary duty independent of any denial of benefits.  Consequently, Counts Three and Four must be read as claims for benefits subject to the exhaustion doctrine and, for the reasons set forth

4147226.3

above, should be dismissed for failure to exhaust administrative remedies. See Harrow, 279 F.3d at 254-55.

## POINT II
## PLAINTIFFS ASSERT LIABILITY AND SEEK RELIEF
## THAT IS NOT AVAILABLE UNDER ERISA
## (COUNT TWO)

Plaintiffs assert an improper theory of liability in Count Two and demand consequential damages that are not cognizable under ERISA. The Supreme Court has made clear that any remedy not expressly set forth in ERISA does not exist. Fritzky v. Aetna Health, Inc., 2010 WL 1186226, *5 (D.N.J. Mar. 24, 2010) (citing Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985)).

ERISA § 502(a) clearly provides for two forms of relief only: (1) an injunction requiring the provision of the desired benefits and (2) reimbursement for benefits paid for by the plaintiff out of his own pocket. Fritzky, 2010 WL 1186226 at *4 (citing 29 U.S.C. § 1132(a); Aetna Health Inc. v. Davila, 542 U.S. 200, 209-10, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312 (2004); DiFelice v. Aetna Healthcare, 346 F.3d 442, 449 (3d Cir.2003)). Accordingly, civil enforcement under ERISA § 502(a) does not permit any remedy for failure to pay benefits in a timely fashion. Fritzky, 2010 WL 1186226 at *4

In Count Two, Plaintiffs allege that "[t]he delays of the Defendants in paying the claims … in a timely fashion constitutes a violation of ERISA." (Compl. ¶ 63.) This theory of liability is not permitted by ERISA § 502(a) and so simply does not exist, nor have Plaintiffs provided any case law or provision of ERISA suggesting it does. As such, Count Two must be dismissed. See Fritzky, 2010 WL 1186226 at *4.

Further, Plaintiffs seek consequential damages, including damages for bad credit scores and denial of secondary insurance coverage, that are not available under ERISA. Consequential

13

damages are extra-contractual and are not allowed by ERISA.  Turner v. CIGNA Grp. Ins., 2011 WL 2038751, *8 (D.N.J. May 24, 2011) (denying plaintiff's request for compensatory, consequential and punitive damages under ERISA).

## POINT III
## PLAINTIFFS FAIL TO IDENTIFY THE
## PROVISIONS OF THE PLAN AND CBAS WHICH
## DEFENDANTS HAVE ALLEGEDLY VIOLATED
## (COUNTS ONE, TWO & FIVE)

Plaintiffs' failure to identify any provision of the Plan or CBAs under which they seek relief, as required by ERISA and LMRA, respectively, is another fatal defect of the Complaint.

A.     Plaintiffs Fail to Plead with any Specificity the Particular Provision(s) of the Plan that were Allegedly Violated (Counts One & Two)

A plaintiff seeking recovery under ERISA § 502(a)(1)(B) must show that he is due benefits "under the terms of his plan." ERISA § 502(a)(1)(B).  Accordingly, "a cause of action [exists] only where a plaintiff alleges a violation of the terms of a benefits plan or an ambiguity in the plan requiring judicial interpretation."  Eichorn v. AT&T Corp., 484 F.3d 644, 652 (3d Cir. 2007).  A failure to allege the breach of a specific provision of a plan is a defect that requires dismissal.  See Gunderson v. St. Louis Connectcare, 4:08CV01553 JCH, 2009 WL 882240, *2 (E.D. Mo. Mar. 26, 2009) (citing Eichorn, 484 F.3d at 653.)

Here, the Complaint merely states that Plaintiffs "have been denied health and welfare insurance claims which are clearly and expressly covered by the Plan."  (Compl. ¶ 1.)  The Complaint, however, fails to identify even a single provision of the Plan under which Plaintiffs seek relief.  As such, the Complaint is insufficient under the Iqbal / Twombly standard and Counts One and Two should be dismissed.  Midwest Special Surgery, 2010 WL 716105 at *2.

14

B.   Plaintiffs Fail to Plead with any Specificity the Particular Provisions of the CBAs that were Allegedly Violated (Count Five)

To establish a claim under LMRA § 301, an employee must show that his employer violated a collective bargaining agreement in force between the employer and the employee's union.  Abdelmesih v. Waldorf-Astoria, 1998 WL 740940, *4 (S.D.N.Y. Oct. 21, 1998) (citing Union Ind. de Abogados v. Sociedad Para Asist. Legal, 706 F. Supp. 3, 5 (D.P.R.), aff'd without opinion, 887 F.2d 259 (1st Cir. 1989)).  In doing so, "the employee must identify a specific provision of the agreement violated by the employer's action or inaction."  Id.

Count Five alleges that "[u]nder the terms of the CBAs, the Defendant Meadowlands is obliged to provide health and welfare benefits for the members of the Union and the Defendant Plan is obliged to provide such benefits."  (Compl. ¶ 73.)  The Complaint does not, however, indicate which provisions of the CBAs create this obligation, or which provisions Defendant allegedly violated.  Such bare-bones allegations are insufficient to withstand a motion to dismiss. Iqbal, 556 U.S. at 678.  Absent some specific allegations as to the manner in which the CBAs were breached, Count Five should be dismissed.

## POINT IV
## THE COMPLAINT FAILS TO PLEAD DEFENDANTS USED ASSETS OF THE PLAN FOR THEIR OWN BENEFIT
## (COUNT FOUR)

Plaintiffs' failure to plead how Defendants allegedly used the assets of the Plan for their own benefit warrants dismissal.  To survive a motion to dismiss, a complaint alleging a fiduciary's violation of ERISA § 1106(b)(1) for dealing with plan assets in its own interest, must contain factual content regarding what the fiduciary allegedly did with the plan funds.  See Structural Maint. & Contracting Co., Inc. v. Jayce Enterprises, Inc., 2010 WL 4159517, *5 (S.D.N.Y. Oct. 12, 2010) (dismissing plaintiffs' ERISA § 1106(b)(1) claim because the complaint did not contain factual content regarding what the fiduciary did with the plan funds).

15

Without such factual support, "the Court cannot draw the reasonable inference that [the fiduciary] dealt with plan assets in its own interest." Id. (citing Iqbal, 129 S. Ct. at 1940).

Here, Count Four merely provides that "[b]y refusing and/or delaying to pay benefits under the terms of the Plan, Defendant Meadowlands effectively has used the assets of the plan for its benefit." (Compl. ¶ 69).  The Complaint is devoid of any factual enhancement describing what Defendant allegedly did with the Plan's funds.  As such, there can be no reasonable inference that Defendants dealt with the Plan's assets in their own interest.  Structural Maint. & Contracting Co., 2010 WL 4159517 at *5.  Accordingly, Count Four of the Complaint alleging a fiduciary violation of ERISA § 1106(b)(1) should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint should be granted, and Plaintiffs' Complaint should be dismissed in its entirety as a matter of law.


Dated: September 19, 2013                    /s/ A. Ross Pearlson
                                             A. Ross Pearlson
                                             Xavier M. Bailliard
                                             **WOLFF & SAMSON PC**
                                             One Boland Drive
                                             West Orange, NJ 07052
                                             Telephone: (973) 530-2100
                                             Facsimile: (973) 530-2300
                                             rpearlson@wolffsamson.com
                                             xbailliard@wolffsamson.com

                                             *Attorneys for Defendants*
                                             *MHA LLC d/b/a Meadowlands Hospital*
                                             *Medical Center and Meadowlands Hospital*
                                             *Medical Center Health & Welfare Benefits*
                                             *Program*