UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Maria CIOTTI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MEADOWLANDS HOSPITAL MEDICAL CENTER and MEADOWLANDS HOSPITAL MEDICAL CENTER HEALTH & WELFARE BENEFITS PROGRAM,<br><br>Defendants. | Civ. No. 2:13-2055<br>(KM)(SCM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

This matter comes before the court on the motion of Defendants (ECF No. 23) to dismiss the Second Amended Complaint ("Complaint") (ECF No. 21). The plaintiffs, Maria Ciotti, Dorota Janczak, Nebis Diaz, Katie Polite, Danuta Majdosz, Thomas A. Smid, Lidia Mateo, Bernadette Berida-Miller, Towanda Budhu, and Lutgarda Bieluch, sue individually and on behalf of a putative class of persons similarly situated (collectively, "Employees").[1] They are current and former employees of Meadowlands Hospital Medical Center (the "Hospital"), which maintains the Meadowlands Hospital Medical Center Health and Welfare Benefits Program (the "Plan"). (For simplicity, I will refer to defendants collectively as "Meadowlands.") The Employees allege that Meadowlands systematically denied or delayed the approval and authorization of payments to which they were entitled under their health and welfare

---

[1] This Opinion does not address any issues regarding class certification, consideration of which would be premature.

1

benefits plans. They bring claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA").

For the reasons set forth below, the motion to dismiss is **GRANTED** in part and **DENIED** in part. Because plaintiffs have stated in their papers the manner in which they contend that this action is not barred by failure to exhaust administrative remedies, it is clear that further amendment of the Second Amended Complaint would not be futile. See Fed. R. Civ. P. 15(a)(2); *Philips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Leave is granted to file a Third Amended Complaint within 14 days.

## I. BACKGROUND

The Plaintiffs are all current or former employees of the Hospital and participants in the Plan. (Compl. ¶1, ECF No. 21). They are represented by the Health Professionals and Allied Employees, AFT, AFL-CIO (the "Union"), which is an employee organization under Section 3(4) of ERISA, 29 U.S.C. §1002(4) and a labor organization under Section 2(5) of the National Labor Relations Act, ("NLRA"), NLRA, 29 U.S.C. §152(5) and Section 301 of LMRA, 29 U.S.C. §185. (*Id.* ¶¶4–18).

Defendant Hospital is a for-profit New Jersey corporation that owns and operates an acute care facility in Secaucus. (*Id.* ¶19). It is an employer under Section 3(5) of ERISA, 29 U.S.C. §1002(5), Section 301 of the LMRA, and 29 U.S.C. §185 and Section 2(2) of the NLRA, 29 U.S.C. §152(2), a plan sponsor of the Plan under Section 16(B) of ERISA, 29 U.S.C. §1002(16)(B), the Administrator of the Plan, and a fiduciary under Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). (*Id.*).

Defendant Plan is an employee welfare benefit plan under Section 3(1) of ERISA, 29 U.S.C. §1002(1). (*Id.* ¶20). The Plan is maintained by the Hospital, which is essentially self-insured.

The Hospital and the Union have three separate Collective Bargaining Agreements ("CBAs"). (*Id.* ¶21). The Employees are third party beneficiaries of the CBAs. (*Id.* ¶4). The CBAs state that employees represented by the Union must be provided health, welfare, dental, and prescription benefits under the Plan. (*Id.* ¶¶22–23).

Under the Plan, a third party administrator ("TPA") processes Employees' claims and determines whether and how much the Plan will pay on each claim. (*Id.* ¶¶25–26). Until July 1, 2011, the TPA was Qualcare, Inc.; thereafter, it was MagnaCare, LLC. (*Id.* ¶¶ 1, 25). After approving a claim for payment, the TPA must receive approval from Meadowlands before disbursing the payment to the employee or the employee's health care provider. (*Id.* ¶26). The Employees allege that Meadowlands has: 1) "refused to approve or authorize payment of claims that the TPA has deemed covered by the Plan"; and 2) "delayed authorization of payment of claims by the TPA and/or . . . setting forth the reasons why claims have not been paid or why only certain amounts of claims have been paid." (*Id.* ¶¶27–29). The Employees claim that, as a result, they have been obligated to pay out of pocket for medical services that should have been covered under the Plan, have been denied secondary insurance coverage, have been denied the opportunity to have in-network health care providers accept their payments as full settlements of claims, have received bad credit scores, have been denied loans, have had difficulty obtaining medical services, have been subject to threats of litigation from health care providers, have been sued by health care providers, have had judgments rendered against them, and have had wages garnished. (*Id.* ¶¶30–44).

The Complaint asserts the following claims: violation of ERISA by failure to pay benefits under the Plan (Count I); violation of ERISA by failure to pay benefits in a timely fashion (Count II); breach of fiduciary duty under ERISA by failure to provide benefits or to provide benefits in a

3

timely fashion (Count III); breach of fiduciary duty under ERISA by refusing to pay benefits or delaying payment of benefits, and thus, using Plan assets for the benefit of Meadowlands (Count IV); breach of Collective Bargaining Agreements by refusing to pay benefits under the Plan (Count V). (*Id.* ¶¶59–75).

Meadowlands now moves to dismiss the Complaint, arguing that 1) it fails to allege exhaustion of available administrative remedies; 2) it seeks relief not available under ERISA; 3) it fails to identify the provisions of the Plan and CBAs that Meadowlands allegedly violated; and 4) it fails to disclose how Meadowlands allegedly used assets of the Plan for its own benefit. (Def. Br., ECF No. 23).

## II. DISCUSSION[2]

### a. Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation

---

[2] The parties have submitted additional materials to the Court along with their briefs. Fed. R. Civ. P. 12(d) instructs that "[i]f, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Finding that factual development in discovery will be necessary, I do not exercise that option to treat the motion as one for summary judgment.

to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. Exhaustion of Administrative Remedies
#### i. *The Plan's Appeal and Grievance Procedures (Counts I, II)*

Meadowlands argues that the Employees have failed to allege exhaustion of administrative remedies available under the Plan, which permits them "to challenge a denial of any claim." (Def. Br. 6). The Employees respond that the TPA generally *approved* their claims, but Meadowlands simply did not pay. Under those circumstances, they say, resorting to administrative remedies would be futile. (Pl. Br. 7–9).

An ERISA Plan beneficiary must exhaust available administrative remedies under an ERISA Plan before bringing a civil action under Section 502(a)(1)(B) to recover benefits under the Plan. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) ("Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.") (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990)). The Third Circuit has explained that

> Courts require exhaustion of administrative remedies to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned. Moreover, trustees of an ERISA plan are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.

*Harrow*, 279 F.3d at 249 (internal quotations and citations omitted).

There is an exception to the exhaustion requirement when "resort to the administrative process would be futile." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990). A court must weigh the following factors in determining whether the futility exception applies:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

*Harrow*, 279 F.3d at 250.

The Employees argue that "in light of the nature of their claims," pursuing administrative remedies would be futile. (Pl. Br. 7–9). Specifically, they argue that "there are absolutely no adverse benefit determinations which the Plaintiffs could have sought review under the Appeals Procedure." (*Id.* at 8). Rather, they explain, a third party administrator approved their claims, but Meadowlands then delayed payments for certain claims and refused to authorize the release of payment on other claims. (*Id.*). In response, Meadowlands argues that its delay or denial in paying benefits is itself an adverse benefits determination from which an employee can appeal, using the Plan's administrative remedies. (Def. Reply Br. 2–3, ECF No. 32).

6

All of these contentions raise issues of fact, both as to the procedures generally and as to the history of individual claims specifically. The issue of exhaustion cannot profitably be addressed without discovery, and may be ripe for decision only at the summary judgment stage, if then.

The Complaint does not explicitly plead exhaustion or futility. It is inferable from the nature of the Employees' claims that they regard the administrative process as futile. Whether a complaint must explicitly plead ERISA exhaustion (or futility) is a vexed question, and one that may depend on the particular qualities of the claim. *Compare Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279–80 (3d Cir. 2007) (treating ERISA exhaustion as a "nonjurisdictional affirmative defense") *with Schweikert v. Baxter Healthcare Corp.*, No. CIV.A. 12-5876 FLW, 2013 WL 1966114, at *4 (D.N.J. May 10, 2013) (treating ERISA exhaustion as a jurisdictional requirement and requiring plaintiff to make a showing of exhaustion or futility in the complaint).

There is no need to let the pleading issue impede the progress of this case. From statements in briefs and at oral argument, it clear that plaintiff intends to establish exhaustion or futility. I will grant leave to file a Third Amended Complaint that remedies any technical deficiency in pleading.

In the meantime, however, this case will move forward. Discovery will proceed on a schedule to be set by the Magistrate Judge. I suggest that the initial phase of discovery focus on exhaustion and futility issues. As noted above, they would best be resolved on summary judgment.

### ii. *The CBAs' Grievance and Arbitration Procedures (Count V)*

As to the CBA claim in Count V, Meadowlands asserts failure to allege exhaustion of administrative remedies under the CBAs. "It is well

established that in order to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract." *Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 334 (3d Cir. 1985) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53 (1965); *Findley v. Jones Motor Freight*, 639 F.2d 953, 957 (3d Cir.1981)); *see also Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 261 (3d Cir. 1990) (finding that the statute of limitations for a Section 301 action is tolled until a plaintiff can "fairly allege" "the futility of further appeals" because without this allegation "a claim could not be maintained").

The Employees essentially respond that there is no such remedy: the CBAs "expressly excluded from the purview of the grievance and arbitration procedure individual claims for benefits under the various insurance programs." (Pl. Br. 9). As Meadowlands itself points out, disputes involving claims for ERISA benefits are excluded from the CBAs' appeals procedures; the CBA refers such disputes back to the Plan's appeals process. (Def. Reply Br. 8, ECF No. 32).

At this pleading stage, then, the LMRA presents the same exhaustion issue discussed above with respect to the Plan's appeals procedures.

As to any appeal or review that might arguably be maintained under the CBA, the necessity of pleading exhaustion is not crystal clear. *Compare Albright v. Virtue*, 273 F.3d 564, 567 (3d Cir. 2001) (treating LMRA exhaustion as a condition precedent) *with Pickett v. Ocean-Monmouth Legal Servs., Inc.*, No. CIV. 11-6980, 2012 WL 254132, at *3 (D.N.J. Jan. 27, 2012) (referring to LMRA exhaustion as a "jurisdictional prerequisite"). I again grant leave to file a Third Amended Complaint that asserts exhaustion or futility with respect to Count V.

### c. Relief Available under ERISA (Count II)

Count II of the Complaint alleges a violation of ERISA due to

8

Meadowlands' alleged failure to pay benefits in a timely fashion. (Compl. ¶63). Meadowlands argues that Count II fails to state a claim because it asserts an improper theory of liability and seeks relief that is unavailable under ERISA. (Def. Br. 13-14).

There is no ERISA provision that expressly authorizes relief for, *e.g.*, interest on late benefits payments. It is an open question in the Third Circuit whether § 502(a)(1)(B)—the section cited in the Complaint—permits such an award. *Templin v. Independence Blue Cross*, 487 F. App'x 6, 12, n.10 (3d Cir. 2012).

The Third Circuit has held, however, that there is such an ERISA cause of action under § 502(a)(3). "A late payment of benefits effectively deprives the beneficiary of the time value of his or her money whether or not the beneficiary secured the overdue benefits through a judgment as the result of ERISA litigation." *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 211-12 (3d Cir. 1998); *see also Templin*, 487 F. App'x at 12 n.10. *Fotta* also held that "an interest claim is not 'extracontractual'" for purposes of an ERISA claim, as interest is a "compensatory remedy" when the plaintiff seeks the interest "to compensate him fully for the . . . delay" in the payment of benefits owed. *Id.* at 212-13 (distinguishing *Mass. Mutual Ins. Co. v. Russell*, 473 U.S. 134 (1985)). "[P]ayment for the time value of money, when appropriate, is an implicit term of the underlying contractual obligation." *Id.* at 214.

Count II of the Complaint states a claim for relief based on Meadowlands' alleged delay in paying benefits in a timely fashion. Such a cause of action may arise under the cited provision, § 502(a)(1)(B), and does arise under § 502(a)(3). Again, should a Third Amended Complaint be filed, leave is granted to supplement or amend the statutory reference.

9

### d. Specificity of Pleading (Counts I, II, V)

Meadowlands argues that the Employees have failed "to identify any provision of the Plan or CBAs under which they seek relief" and that Counts I, II, and V should therefore be dismissed. (Def. Br. 14–15).

Meadowlands cites *Eichorn v. AT&T Corp.*, in which the Third Circuit held that plaintiffs did not properly allege a claim under § 502(a)(1)(B) because they had only "alleged that the defendants interfered with their ability to become eligible for further benefits, not that the defendants have breached the terms of the plan itself." *Eichorn v. AT&T Corp.*, 484 F.3d 644, 653 (3d Cir. 2007). Such is not the case here. Counts I and II of the Complaint sufficiently allege that Meadowlands breached the Plan itself by delaying and denying payments of benefits. No more is required at the pleading stage.

As to the LMRA claim (Count V), Meadowlands argues that (1) the Complaint does not "indicate which provisions of the CBAs create" Meadowlands' "obligat[ion] to provide health and welfare benefits for members of the Union"; and (2) that there are no allegations about "the manner in which the CBAs were breached." (Def. Br. 15 (citing Compl. ¶73)). The case upon which Meadowlands relies held that a plaintiff could not maintain an LMRA claim where "the essence" of the claim related to the union's defective negotiation of a CBA—not in a violation of the CBA itself. (Def. Br. 15 (citing *Abdelmesih v. Waldorf-Astoria*, No. 93 CIV. 4921 CSH, 1998 WL 740940, at *4 (S.D.N.Y. Oct. 21, 1998))). This case is plainly different. Here, the Complaint alleges that, by delaying and denying payments of ERISA benefits, Meadowlands violated an obligation explicitly provided for in the CBAs. (Compl. ¶73, 75).

Thus, the Employees have sufficiently pled ERISA and LMRA violations in Counts I, II, and V of their complaint.

### e. Meadowlands' Use of Plan Assets for Own Benefit (Count IV)

Count V asserts a claim under ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), which requires fiduciaries to discharge their duties "for the exclusive purpose of: providing benefits to participants and their beneficiaries." Meadowlands argues that Count IV fails to allege how Meadowlands misused the Plan's assets, citing *Structural Maintenance & Contracting Co. v. Jayce Enterprises, Inc.*, No. 09 CIV. 8187 BSJ MHD, 2010 WL 4159517, at *4 (S.D.N.Y. Oct. 12, 2010).

*Structural Maintenance*, however, involved a claim that the defendant breached its fiduciary duty to "diversify plan investments," to invest the assets with "care, skill, prudence, and diligence," and to not "deal[] with plan assets in its own interest." *Id*. The court found that, absent any allegation as to how the defendant invested the assets, it could not infer that such an investment was improper.

The claim in this case, by contrast, does not depend on the manner in which Meadowlands applied or disposed of Plan assets. Meadowlands allegedly benefited from Plan funds simply by retaining them, instead of paying the Employees' claims. Meadowlands is not accused of improperly investing funds rightfully in its possession; it is accused of improperly retaining funds that it was supposed to disburse.

The Complaint alleges that "[t]he costs of the Plan are funded directly by Meadowlands and by contributions by eligible employees made pursuant to payroll deductions made on a monthly basis." (Compl. ¶24). "By refusing and/or delaying to pay benefits under the terms of the Plan, Defendant Meadowlands effectively has used the assets of the plan for its benefit." (Compl. ¶69). These allegations sufficiently state a claim for breach of fiduciary duty under ERISA § 404(a)(1)(A)(i).

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss the Second Amended Complaint is **GRANTED** in part and **DENIED** in part. The dismissal is without prejudice to the filing of a Third Amended Complaint within 14 days after the entry of this Order. Within 20 days after the entry of this Order, the plaintiffs shall contact Magistrate Judge Mannion in order to set up a discovery schedule, the initial phase of which should focus on the issue of exhaustion of administrative remedies.

Dated: January 7, 2015

*/s/ Kevin McNulty*
**Kevin McNulty**
**United States District Judge**