## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**MARKOWITZ & RICHMAN**
R. MATTHEW PETTIGREW, JR. (RP-9788)
PETER DEMKOVITZ (PD-7335)
123 South Broad Street
Suite 2020
Philadelphia, PA 19109
215-875-3100
Attorneys for Plaintiffs

_____

| | | |
|---|---|---|
| MARIA CIOTTI | : | |
| 130 Central Avenue | : | No. 2:13-CV-02055-KM-MCA |
| Pompton Lakes, NJ  07442 | : | |
| | : | |
| and | : | |
| | : | |
| DOROTA JANCZAK | : | |
| 98 Hayward Place | : | |
| Wallington, NJ  07057 | : | |
| | : | |
| and | : | |
| | : | |
| NEBIS DIAZ | : | |
| 5110 Hudson Avenue | : | |
| West New York, NJ  07093 | : | |
| | : | |
| and | : | |
| | : | |
| KATIE POLITE | : | |
| 1416 10th Street | : | |
| North Bergen, NJ  07047 | : | |
| | : | |
| and | : | |
| | : | |
| DANUTA MAJDOSZ | : | |
| 175 Union Avenue | : | |
| Rutherford, NJ  07070 | : | |
| | : | |
| and | : | |
| | : | |

THOMAS A. SMID                            :
158 Colonial Avenue                       :
Saddle Brook, NJ  07663                   :
                                          :
        and                               :
                                          :
LIDIA MATEO                               :
517 22nd Street                           :
Union City, NJ  07087                     :
                                          :
        and                               :
                                          :
BERNADETTE BERIDA-MILLER                  :
40 Bryan Road                             :
Washington, NJ  07882                     :
                                          :
        and                               :
                                          :
TOWANDA BUDHU                             :
14 Civic Place                            :
Bloomfield, NJ  07003                     :
                                          :
        and                               :
                                          :
LUTGARDA BIELUCH                          :
59 Garrison Avenue                        :
Jersey City, NJ  07306
                                          :
        and                               :
                                          :
SAJEL PATEL                               :
352 Terrace Avenue                        :
Jersey City, NJ  07307                    :
                                          ;
        and                               :
                                          :
ALBERT GUZMAN                             :
121 Liberty Road, Apartment K             :
Bergenfield, NJ  07621                    :
                                          :
        and                               :
                                          :
SYLVIA CABAN                              :
66 Romaine Avenue                         :
Jersey City, NJ  07036                    :
                                          :

and                                                  :
                                                     :
CHRISTINE CASTELLANOS                                 :
377 W. Pleasanview  Avenue, #103                      :
Hackensack, NJ  07601                                :
                                                     :
        and                                          :
                                                     :
MARTHA SERRANO                                        :
122 Corbin Avenue, Apartment 305                      :
Jersey City, NJ  07306                               :
                                                     :
(Class Representatives and similarly                  :
situated members of the Class)                        :
                                                     :
                Plaintiffs                            :
                                                     :
        v.                                            :
                                                     :
                                                     :
MEADOWLANDS HOSPITAL                                  :
MEDICAL CENTER                                        :
55 Meadowlands Parkway                               :
Secaucus, NJ  07904                                  :
                                                     :
        and                                          :
                                                     :
MEADOWLANDS HOSPITAL                                  :
MEDICAL CENTER HEALTH &                               :
WELFARE BENEFITS PROGRAM                              :
55 Meadowlands Parkway                               :
Secaucus, NJ  07904                                  :
                Defendants                            :

## THIRD AMENDED COMPLAINT

Plaintiffs Maria Ciotti, Dorato Janczak, Nebis Diaz, Katie Polite, Danuta Majdosz,

Thomas Smid, Lidia Mateo, Bernadette Berida-Miller, Towanna Budhu, Lutgarda Bieluch, Sejal

Patel,  Albert Guzman, Sylvia Caban, Christine Castellanos, and Martha Serrano ("Plaintiffs")

on their own behalf and as representatives of a Class of other persons similarly situated, as

defined herein, by and their undersigned counsel, bring this Complaint against Defendants and allege as follows:

## NATURE OF THE ACTION

1.  The Plaintiffs, including all other persons similarly situated as members of the Class they seek to represent, were or are employees of Meadowlands Hospital Medical Center ("Meadowlands") and participants in the Meadowlands Hospital Medical Center Health & Welfare Benefit Program ("Plan"),  the latter of which was  administered until July 1, 2011 by Qualcare, Inc. ("Qualcare") and thereafter by MagnaCare, LLC  ("MagnaCare"), who have been denied health and welfare insurance claims which are clearly and expressly covered by the Plan. Defendants have violated the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §1001, *et seq.* and Section 301 of the Labor Management Relations Act of 1947, as amended, ("LMRA"), 29 U.S.C. § 185 because the Defendants have failed and refused to, or otherwise delayed in considering and paying,  pay the benefit claims of the Plaintiffs and other persons similarly situated, who are members of the class the Plaintiffs seek to represent, notwithstanding the fact that in each and every instance the claims are for benefits covered and which have been approved.  As a consequence, Plaintiffs, and other members of the Class they seek to represent are entitled to recover from the Defendants under ERISA and the LMRA their benefits including but not limited to monies that they have already expended that should have been paid pursuant to the Plan.

## JURISDICTION AND VENUE

2.  This action is instituted under, and by virtue of, Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) and Section 301 of the LMRA, 29 U.S.C. § 185, to collect unpaid benefits that should be but have not been paid pursuant to the terms of the Plan.

3.  This Court has jurisdiction over this matter pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. §§ 1331 and 1337. Venue is appropriate pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b).

## PARTIES

4.  The Plaintiff Maria Ciotti, R. N ("Ciotti") is an adult individual who, until December 31, 2012 was a registered nurse employed by Meadowlands. At all times relevant hereto, Ciotti is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185. Ciotti was and remains represented for purposes of collective bargaining by the Health Professionals and Allied Employees, AFT, AFL-CIO ("Union"), an employee organization within the meaning of Section 3(4) of ERISA, 29 U.S.C. §1002(4) and a labor organization within the meaning of Section 2(5) of the NLRA, 29 U.S.C. §152(5) ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185, and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union. Ciotti lives at 130 Central Avenue, Pompton Lakes, New Jersey 07442.

5.  The Plaintiff Dorota Janczak ("Janczak") is an adult individual who is a radiology/mammography technician employed by Meadowlands. At all times relevant hereto, Janczak is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an

5

employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6) and Section, Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185 . Janczak was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union. Janczak lives at 98 Hayward Place, Wallington New Jersey 07057.

    6.   The Plaintiff Nebis Diaz ("Diaz") is an adult individual who, until October 29, 2012 was a housekeeper  employed by Meadowlands.  At all times relevant hereto, Diaz is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6). Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Diaz was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Diaz lives at 5110 Hudson Avenue, West New York, New Jersey  07093.

    7.   The Plaintiff  Katie Polite ("Polite") is an adult individual who, until October 29, 2012 was a housekeeper employed by Meadowlands.  At all times relevant hereto, Polite is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Polite was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Polite lives at 1416 10th Street, North Bergen, New Jersey  07047.

8. The Plaintiff Danuta Majdosz, R. N. ("Majdosz") is an adult individual who, until October 26, 2012 was a registered nurse employed by Meadowlands. At all times relevant hereto, Majdosz is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185. Majdosz was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union. Majdosz lives at 175 Union Avenue, Rutherford, New Jersey 07070.

9. The Plaintiff Thomas Smid ("Smid") is an adult individual who is employed as a radiology technician employed by Meadowlands. At all times relevant hereto, Smid is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185. Smid was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union. Smid lives at 158 Colonial Avenue, Saddle Brook, New Jersey 07663.

10. The Plaintiff Lidia Mateo ("Mateo") is an adult individual who, until October 28, 2012 was an environmental aide employed by Meadowlands. At all times relevant hereto, Mateo was a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185. Mateo was and remains represented for purposes of collective bargaining by the Union and is thus a

third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Mateo lives at 517 22nd Street, Union City, New Jersey  07087.

11.   The Plaintiff Bernadette Berida-Miller, R. N. ("Berida-Miller)  is an adult individual who is employed as a registered nurse  by Meadowlands.  At all times relevant hereto, Berida-Miller is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6) Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Berida-Miller was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Berida-Miller lives at 40 Bryan Road, Washington, New Jersey 07882.

12.   The Plaintiff Towana Budhu, R. N. ("Budhu")  is an adult individual who is employed as a registered nurse employed by Meadowlands.  At all times relevant hereto, Budhu is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Buhdu was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Budhu lives at 14 Civic Place, Bloomfield, New Jersey  07003.

13.   The Plaintiff Lutgarda Bieluch ("Bieluch") is an adult individual who, until November 30, 2012 was a pharmacy technician employed by Meadowlands.  At all times relevant hereto, Bieluch was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C

§1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Bieluch was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Bieluch lives at 59 Garrison Avenue, Jersey City, New Jersey  07306.

14.  The Plaintiff Sajel Patel ("Patel") is an adult individual who at all times relevant hereto has or was employed by Meadowlands.  At all times relevant hereto, Patel was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Patel was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Patel lives at 352 Terrace Avenue, Jersey City, New Jersey  07307.

15.  The Plaintiff Albert Guzman ("Guzman")is an adult individual who at all times relevant hereto has or was employed by Meadowlands.  At all times relevant hereto, Guzman was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Guzman was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Guzman lives at 121 Liberty Road, Apartment KI, Bergenfield, NJ  07621.

16.  The Plaintiff Sylvia Caban ("Caban") is an adult individual who at all times relevant hereto has or was employed by Meadowlands.  At all times relevant hereto, Caban was

and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Caban was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Caban lives at 66 Romaine Avenue, Jersey City, New Jersey  07306.

17.     The Plaintiff Christine Castellanos ("Castellanos") is an adult individual who at all times relevant hereto has or was employed by Meadowlands.  At all times relevant hereto, Castellanos was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Castellanos was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Castellanos lives at 377 W. Pleasantview Avenue, #103, Hackensack, NJ  07601.

18.     The Plaintiff Martha Serrano ("Serrano") is an adult individual who at all times relevant hereto has or was employed by Meadowlands.  At all times relevant hereto, Serrano was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7) and an employee within the meaning of Section 3(6) of ERISA, 29 U.S.C §1002(6), Section 2(3) of the National Labor Relations Act ("NLRA") and Section 301 of the LMRA, 29 U.S.C. §185.  Serrano was and remains represented for purposes of collective bargaining by the Union and is thus a third party beneficiary of the collective bargaining agreement between Meadowlands and the Union.  Serrano lives at 122 Corbin Avenue, Apartment 305, Jersey City, New Jersey  07306.

19.    The Defendant Meadowlands is a for-profit New Jersey Corporation which owns and operates an acute care hospital at 55 Meadowbrook Parkway in Secaucus, New Jersey. Meadowlands is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), Section 301 of the LMRA, and  29 U.S.C. §185 and Section 2(2) of the NLRA, 29 U.S.C. §152(2),  the plan sponsor within the meaning of Section 16(B) of ERISA, 29 U.S.C. §1002(16)(B) of the Plan , the Plan Administrator, and a fiduciary within the meaning of  Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

20.   The Defendant Plan is an employee welfare benefit plan within the meaning of Section 3(1) of ERISA, 29 U.S.C. §1002(1).

## FACTUAL ALLEGATIONS

21.    Meadowlands and the Union are parties to three separate collective bargaining agreements ( "CBAs") covering professional, technical, service and maintenance and certain clerical employees of Meadowlands which cover the period of December 7, 2010 through May 31, 2016.

22.    At all times relevant hereto, the CBAs expressly provide that employees represented by the Union are to be provided benefits as set forth in the Plan.

23.    Under the terms of the Plan, all eligible employees employed by Meadowlands are provided health and welfare, dental and prescription benefits,

24.    The costs of the Plan are funded directly by Meadowlands and by contributions by eligible employees made pursuant to payroll deductions made on a monthly basis.

25.    Employees who are participants in the Plan and who obtain services from health care providers where such services are covered  by the Plan either submit such claims directly, or

have their health care providers submit claims directly to MagnaCare, a Third Party

Administrator ("TPA").  Prior to July 1, 2011, QualCare served as the TPA for the Plan.

26.    The TPA, upon receiving a claim, determines whether the employee making such

claim is a Plan participant or beneficiary, decides whether in fact such claims for benefits are

covered by the Plan, the amount of each covered claim that the Plan will pay and, in the case of a

valid claim, so advises Meadowlands.  The TPA will then release money to pay the claims, either

directly to the eligible employee in instances, or to the health care provider who provided the

services to the eligible employee, only after receiving approval from Meadowlands, the Plan

sponsor, to expend funds.

27.  Since January 1, 2011, and at various times thereafter, Meadowlands has

systematically and consistently refused to approve or authorize payment of claims that the TPA

has deemed covered by the Plan, has insisted on determining whether or not claims should be

covered or paid, which is the role of the TPA, and has failed to advise the Plaintiffs and the class

members of its decision not to approve payment or, to the extent that such non-payment

constitutes an adverse benefit determination, how to appeal such adverse determination under the

terms of the Plan.

28.  The conduct by Meadowlands as alleged in Paragraph 27 of this Complaint is in

violation of 29 C.F.R. §2650.503-1(f) and renders any effort on the part of the Plaintiffs and the

class members to file adverse determination appeals impossible and/or futile.

29.  Since January 1, 2011, and at various times thereafter, the Defendants have

systematically and consistently delayed and/or failed to authorize payment of claims by the TPA

and/or has delayed or failed to issue Explanations of Benefits ("EOBs"), setting forth the reasons

why claims have not been paid or why only certain amounts of claims have been paid.  Such

failure to make, or delay in making such payments and/or issuing has prevented participants from submitting outstanding balance to secondary insurers.

30.    The conduct by Meadowlands as alleged in Paragraph 29 of this Complaint is in violation of 29 C.F.R. §2650.503-1(f) and renders any effort on the part of the Plaintiffs and the class members to file adverse appeal determinations impossible and/or futile.

31.    Since January 1, 2011, and at various times thereafter, the Defendants have systematically and consistently refused to, or delayed authorization of payment of claims by the TPA and/or issuing Explanations of Benefits ("EOBs"), setting forth the reasons why claims have not been paid or why only certain amounts of claims have been paid with respect to In-Network claims.  The non-payment of lack of such prompt payment of In-Network claims thereby prevents the participants with entering into agreements with In-Network providers to accept such payments in full,

32.    The conduct by Meadowlands as alleged in Paragraph 31 of this Complaint is in violation of 29 C.F.R. §2650.503-1(f) and renders any effort on the part of the Plaintiffs and the class members to file adverse appeal determinations impossible and/or futile.

33,    To the extent that the Defendants have failed and refused to authorize payment approved by the TPA and have failed and refused to issue EOBs, the Defendants have failed to provide notice required by 29 C.F.R. §2650.503-1(g) as to how a participant in the Plan can appeal an adverse determination and, accordingly, appeal by the Plaintiffs and the class members would have been futile.

34.    As a result of Meadowlands' refusal to authorize payment by the TPA of claims, or delay in paying certain claims that the TPA has approved, the Plaintiff Ciotti has been advised by her health care providers that she owes them $20,033.34,  has been obliged to make payments of

$60.00 per month that should otherwise have been paid by the Plan, and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims..  Further, the Defendants have failed to decide an appeal by Ciotti filed on October 26, 2012 with regard to $1,098.00 in emergency room physician charges that were denied initially by MagnaCare on October 22, 2012.

35.    As a result of Meadowlands' refusal to authorize or delay in authorization of payments by the TPA of claims that TPA has approved, the Plaintiff Janczak has been advised by her health care providers that she owes them $20,798.78, has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits, and the ability to have In-Network providers accept Plan payments in full settlement of all claims..

36.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Diaz has been advised by her health care providers that she owes them $3,302.00,has received bad credit scores by virtue of her obligation to her health care providers, and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

37.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA claims that the TPA has approved, the Plaintiff Majdosz has been advised by her health care providers that she owes them $5,408.38 and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an

Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

38.    As a result of Meadowlands' refusal to authorize, or delay in of authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Smid has been advised by his health care providers that he owes them $34,617.68,  has  had and continues to have difficulty obtaining medical services for his minor children, has been the subject of threats of litigation from health care providers,  and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

39.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Mateo has been advised by her health care providers that she owes them $11,702.11, has received bad credit scores by virtue of her obligation to her health care providers, has been denied loans because of such bad credit scores and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

40.    As a result of Meadowlands' refusal to authorize, or delay in authorization of, payments by the TPA of claims that the TPA has approved, the Plaintiff Berida-Miller has been advised by her health care providers that she owes them  $47,619.72, has been threatened with collection action by Hackensack University Medical Center, cannot obtain payment, or reimbursement from other insurance carriers that provide her coverage because the Defendant Plan has failed to provide, or delayed in providing EOB statements and has been having difficulty obtaining vaccinations for her newborn child.

41.    As a result of Meadowlands' refusal to authorize, or delay in authorization of, payments by the TPA of claims that the TPA has approved, the Plaintiff Budhu has been advised by her health care providers that she owes them $855.00, has had to pay $1,227.10 to her health care providers that should have been pain in whole or in part by Meadowlands, and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

42.    As a result of Meadowlands' refusal to authorize, or delaying in authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Bieluch has been sued by her health care provider, Meadowlands Pinnacle Anesthesia which obtained a judgment of $1,565.31 against her and attached her savings account in that amount in addition to additional costs and interest, and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

43.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that TPA has approved, the Plaintiff Polite who has been obliged to pay claims that should have been covered by the Plan and has been advised by her health care providers that she is delinquent in the amount of $2,057.25 and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

44.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Patel has been advised

by his health care provider, Meadowland Pinnacle Anesthesia, he owes the provider $1,680.00, has had a judgment entered against him in the amount of $1,790.55, and has had his wages garnished.

45.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that the TPA has approved, the Guzman has been advised by his health care provider, Pinnacle Emergency Group Meadowlands that he is delinquent in the amount of $900.36    and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

46.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Caban has been advised by her health care providers that she is delinquent in the amount of $9,811.19 and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

47.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Castellanos has been advised by hers health care provider Riverview Gastroentrology, LLC that she is delinquent in the amount of $489.50 and has been denied secondary insurance coverage because of the inability or refusal of the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network providers accept Plan payments in full settlement of all claims.

48.    As a result of Meadowlands' refusal to authorize, or delay in authorization of payments by the TPA of claims that the TPA has approved, the Plaintiff Serrano has been

advised by her health care provider Express Scripts that she is delinquent in the amount of

$162.54 and has been denied secondary insurance coverage because of the inability or refusal of

the Defendant Plan to provide an Explanation of Benefits and the ability to have In-Network

providers accept Plan payments in full settlement of all claims.


### CLASS ACTION ALLEGATIONS

49.     The Plaintiffs, on behalf of themselves and the members of the Class, repeat and

re-allege the allegations as set forth in Paragraphs 1 through 48 of this Complaint.

### A.     Definition of the Class

50.     The Plaintiffs and the other similarly situated employees and former employees

constitute a class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil

Procedure.

51.     The Class is defined as all of those individuals employed by Meadowlands after

January 1, 2011 who are or were represented by the Union for purposes of collective bargaining,

were covered by the Plan and who had medical claims deemed by the TPA to be covered by the

Plan but whose claims were not paid by Meadowlands in violation of ERISA and the LMRA.

### B.     Numerosity

52.     The Class is so numerous as to render joinder of all members impracticable.

Upon information and belief, approximately 450 individuals were employed by Meadowlands

after January 31, 2011 who are or were represented by the Union, were covered by the plan and

who had medical claims deemed by the TPA to be covered by the Plan but whose claims were

not paid by Meadowlands in violation of the LMRA.  Other than the individuals directly engaged

by the undersigned counsel, the identities of all Class members are unknown but are

ascertainable through appropriate discovery.

### C.     Existence and Predominance of Common Issues

53.     Common questions of law and fact are applicable to all members of the Class.

54.     The common questions of law and fact arise from and concern the following facts

and actions, among others, that Defendants committed or failed to commit as to all members of

the Class:

       a.     all Class members were covered by ERISA and are or were represented

for purposes of collective bargaining by the Union;

       b.     all Class members are or were employees of Defendant Meadowlands;

       c.     all Class members were covered by the Defendant Plan;

and

       d.     all Class Members had medical claims approved by the TPA but have not

had those claims paid by virtue of Defendant Meadowlands' refusal to approve such payment.

       e.     all Class Members did not receive notice of adverse benefit determinations

as required by 29 C.F.R. §2650.503-1(f) nor were they advised of their appeal rights as required

by 29 C.F.R. §2650.503-1(g).

55.     The questions of law and fact common to members of the Class, as above noted,

predominate over any questions affecting only individual members, and thus, this class action

proceeding is superior to other available methods for the fair and efficient adjudication of this

controversy.

56.     The claims of Plaintiffs are not subject to any unique defenses nor does any interest of Plaintiffs in this litigation conflict with any other member of the Class.

### D.     Typicality

57.     The Plaintiffs' claims are typical of the claims of other members of the Class.  All such claims arise out of Defendant Meadowlands' failure and refusal to pay health claims deemed by the TPA to be covered by the Plan.  Plaintiffs and other Class members have suffered a common injury arising out of Defendants' common course of conduct as alleged herein.

### E.     Adequate Representation

58.     The Plaintiffs will fairly and adequately protect and represent the interests of the Class and have no interest antagonistic to or in conflict with those of other Class members.

59.     The Plaintiffs have the time and resources to prosecute this action and have retained qualified counsel who have extensive expertise in matters involving ERISA and LMRA Class Action litigation.  The Plaintiffs intend to prosecute this action vigorously for the benefit of the Class.

### F.     Superiority

60.     A class action is superior to other available methods for a fair and efficient adjudication of this controversy because individual joinder of all members of the Class is impractical.  Furthermore, damages suffered by members of the Class may be relatively small when compared to the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Class to obtain relief.  The interests of judicial

economy favor adjudicating the claims of the Class on a classwide rather than an individual basis.

### G.    Risks of Inconsistent or Varying Adjudication

61.    Class treatment is proper in this proceeding in order to avoid inconsistent or varying adjudications with respect to individual Class members.  Separate actions by individual members of the Class would create a risk of adjudication of disputed issues of law or fact as to some of the former employees that would be binding upon other Class members not party to the adjudication, or would otherwise substantially impair or impede their ability to protect their interests.

62.    Pursuant to Fed. R. Civ. P. 23(a), the Class meets all the requirements for class certification.

### COUNT ONE

### CLAIM  FOR VIOLATION OF ERISA BY FAILURE TO PAY BENEFITS

63.    The Plaintiffs, on behalf of themselves and the members of the Class, repeat and re-allege the allegations as set forth in Paragraphs 1 through 62 of this Complaint.

64.    The claims of the named Plaintiffs and the members of the Class which have been deemed covered by the Plan by the TPA are benefits within the meaning of ERISA to which the named Plaintiffs and members of the class are entitled.

65.    The refusal of the Defendants to pay the claims of the named Plaintiffs and the members of the Class which have been deemed covered by the terms of the Defendant Plan by the TPA constitutes a violation of ERISA.

66.     To the extent that the failure of the Defendants to pay claims could be characterized as an adverse determination of benefits, no appeal pursuant to the Plan rules with respect to adverse determinations was filed by the Plaintiffs and the members of the Class because any effort to exhaust such process would have been futile.

## COUNT TWO

## CLAIM  FOR VIOLATION OF ERISA BY FAILURE TO PAY BENEFITS IN A TIMELY FASHION

67.     The Plaintiffs, on behalf of themselves and the members of the Class, repeat and re-allege the allegations as set forth in Paragraphs 1 through 66 of this Complaint.

68.     The delays of the Defendants in paying the claims of the named Plaintiffs and the members of the Class which have been deemed covered by the terms of the Defendant Plan by the TPA in a timely fashion constitutes a violation of ERISA.

69.      To the extent the conduct complained of in Paragraph 68 of the Complaint could be characterized as an adverse determination, no appeal pursuant to the Plan rules with respect to adverse determinations was filed by the Plaintiffs and the members of the Class because any effort to exhaust such process would have been futile.

## COUNT THREE

## CLAIM  FOR BREACH OF FIDUCIARY DUTY- FAILURE TO ADMINISTER PLAN IN THE EXCLUSIVE INTERESTS OF THE PARTICIPANTS AND THEIR BENEFICIARIES

70.     The Plaintiffs, on behalf of themselves and the members of the Class, repeat and re-allege the allegations as set forth in Paragraphs 1 through 63 of this Complaint.

71.     The Defendant Meadowlands is, pursuant to Section 402(a)(2) of ERISA, 29 U.S.C. §1102(a)(2), a named fiduciary and accordingly has been so designated by the Plan.

72.     Pursuant to Section 404(a)(1)(A)(i) of ERISA, 29 U.S.C.   §1104(1)(1)(A)(i), Defendant Meadowlands has a fiduciary obligation to administer the Defendant Plan for the purpose of providing benefits to the named Plaintiffs and class members and their beneficiaries.

73.     The refusal of Defendants to provide benefits or to provide such benefits in a timely fashion to the named Plaintiffs and class members and their beneficiaries, notwithstanding the fact that the claims of the named Plaintiffs and the class members are covered by the Defendant Plan, constitutes a breach of the fiduciary duty owed by the Defendant Meadowlands to administer the Defendant Plan for the benefit of the named Plaintiffs and class members and their beneficiaries.

**COUNT FOUR**

**CLAIM  FOR BREACH OF FIDUCIARY DUTY- ENGAGING IN PROHIBITED TRANSACTION OF FIDUCIARY BY USING PLAN ASSETS FOR ITS OWN BENEFITS**

74.     The Plaintiffs, on behalf of themselves and the members of the Class, repeat and re-allege the allegations as set forth in Paragraphs 1 through 73 of this Complaint.

75.     By refusing and/or delaying to pay benefits under the terms of the Plan, Defendant Meadowlands effectively has used the assets of the plan for its benefit.

76.     As a fiduciary, Defendant Meadowlands has engaged in prohibited transactions by using the assets of the Plan for the benefit of Meadowlands and thus has violated Section 1106(b)(1) of ERISA, 29 U.S.C. §1106(b)(1).

77.     The conduct of Defendant Meadowlands in utilizing the assets of the Plan for its own benefits is a breach of its fiduciary duty as defined by Section 404(a)(1)(A)(i) of ERISA; 29 U.S.C. §1104(a)(1)(A)(i).

**COUNT FIVE – BREACH OF COLLECTIVE BARGAINING AGREEMENT**

78.     The Plaintiffs, on behalf of themselves and the members of the Class, repeat and re-allege the allegations as set forth in Paragraphs 1 through 77 of this Complaint.

79.     Under the terms of the CBAs, the Defendant Meadowlands is obliged to provide health and welfare benefits for the members of the Union and the Defendant Plan is obliged to provide such benefits.

80.     The named Plaintiffs and the class members are all third party beneficiaries of the CBAs.

81.     The refusal of the Defendants to pay health and welfare benefits for the named Plaintiffs and class members constitutes a breach of the CBAs.

WHEREFORE, the named Plaintiffs and the other similarly situated Union members and former members, as the members of the Class they seek to represent, demand judgment against Defendants as follows:

A.     A monetary judgment in favor of each named Plaintiff and each other similarly situated members and former members of the Union the equal to the sum of: (a) all unpaid health and welfare benefits that have been deemed covered by the terms of the Defendant Plan; (b) any health and welfare expenses incurred beginning January 1, 2011 by such persons that would have been covered and paid under the terms of the Defendant Plan; (c) any health

and welfare expenses paid by such persons beginning January 1, 2011 that would have otherwise been covered and paid under the terms of the Defendant Plan; (d) any health and welfare expenses that would have been paid by secondary insurances but were not paid because in delays by the Defendants in making payments and/or issuing EOBs; and (e) any additional monies charged by In-Network providers who would otherwise have waived those charges had they been timely compensated by the Defendants

       B.      Certification that the Plaintiffs and the other similarly situated Union and former Union members constitute a single class;

       C.  Attorneys' fees and costs, as provided by Fed. R. Civ. P. 23(h) and/or;

       D.  Interest as allowed by law on the amounts owed under the preceding paragraphs;

       E.  An Order be entered requiring that the Defendant Meadowlands authorize the payment of any claim for benefits deemed covered by the TPA that has been filed by the named Plaintiffs and the other similarly situated Union members who are members of the class within fifteen (15) days of such approval  and that the Defendant Plan make such payment of such claim be paid within fifteen (15) days of authorization; and

F.   And any other legal or equitable relief deemed just and reasonable by the Court.


Respectfully submitted,

**MARKOWITZ & RICHMAN**


BY: /s/Peter H. Demkovitz, Esquire


Of Counsel:
Jonathan Walters, Esquire
123 S. Broad Street, Suite 2020
Philadelphia, PA  19109
Telephone: (215) 875-3121
Telefax: (215) 790-0668
Email: jwalters@markowitzandrichman.com

Attorneys for Named Plaintiffs

Dated: January 19, 2015

26